1

2

3

4

5

6

7                    UNITED STATES DISTRICT COURT

8                    EASTERN DISTRICT OF CALIFORNIA

9

10   IN RE:

11   SK FOODS, L.P.

12            Debtor.

13   BRADLEY D. SHARP,                    CIV. NO. S-10-810 LKK

14            Plaintiff,

15                 v.

16   SCOTT SALYER, et al.,

17            Defendants.
     _____/
18   IN RE:

19   SK FOODS, L.P.

20            Debtor.

21   BRADLEY D. SHARP,                    CIV. NO. S-10-811 LKK

22            Plaintiff,

23                 v.

24   SKF AVIATION, LLC, et al.,

25            Defendants.
     _____/
26

IN RE:

SK FOODS, L.P.

　　　　Debtor.

BRADLEY D. SHARP,                           CIV. NO. S-10-812 LKK

　　　　Plaintiff,

　　　　　　v.

SSC FARMS 1, LLC, et al.,                    O R D E R

　　　　Defendants.
_____/

　　　This appeal arises from the Bankruptcy Court's entry of a preliminary injunction in three adversary proceedings pending against Appellants. Appellants are Scott Salyer and subsidiary or affiliate companies owned by him. Some of these companies are fellow debtors, and others are non-debtor entities. The Bankruptcy Trustee contends that the debtor entities have an equitable interest in three parcels of land and other assets held by the non-debtor entities. The Bankruptcy Court preliminarily enjoined the non-debtor entities from transferring or disposing of any of their assets, other than for specific reasons associated with the ordinary course of business, until after the resolution of the adversary proceedings. This court has jurisdiction pursuant to 28 U.S.C. § 158(a). For the reasons described below, the court affirms the Bankruptcy Court's order, although it somewhat modifies the preliminary injunction as it relates to the payment of attorneys' fees for the non-debtor entities.

////

2

1                          **I. BACKGROUND**

2        **A.    The Bankruptcy Action and The Parties**

3        On   or   about   May   7,   2009,   SK   Foods   LP   and   RHM

4 Industrial/Specialty Foods, Inc. (collectively, "debtors") filed

5 voluntary petitions for relief under Chapter 11 of the Bankruptcy

6 Code, 11 U.S.C. § 101, et. seq. <u>See</u> Excerpts of Record at DEF000003

7 ¶12 ("EOR"). The Bankruptcy Court appointed Bradley D. Sharp as the

8 Trustee. EOR DEF000002 ¶1.

9        The debtors consist of several subsidiary companies owned by

10 either Salyer, his daughters, or a trust set up in one of their

11 names. <u>See</u> EOR DEF 000002-3; DEF000015-16. They include: Scott

12 Salyer individually and as trustee for the Scott Salyer Revocable

13 Trust, the Scott Salyer Revocable Trust, SS Farms, LLC, SSC Farms

14 I, LLC, SSC Farms II, LLC, SSC Farms III, LLC, SSC Farming LLC, SK

15 PM Corporation, SKF Canning, LLC, SK Foods, LLC, Blackstone Ranch

16 Corporation, Monterey Peninsula Farms, LLC, Salyer Management

17 Company, LLC, SK Farms Services, LLC, Sk Frozen Foods, LLC, SkF

18 Aviation, LLC, and CSSS, L.P. dba Central Valley Shippers. <u>See</u> <u>id.</u>;

19 Appellant's Opening Brief at 1 ("Brief").

20       **B.    The Adversary Proceedings**

21       The Trustee filed seven adversary proceedings against the

22 Appellants in 2009 and early 2010. Three of these are at issue in

23 the present appeal. <u>Sharp v. SSC Farms I, LLC et al.</u>, No. 09-2692-D

24 ("the Quiet Title Action"); <u>Sharp v. Salyer et al.</u>, No. 10-2014-D

25 ("the Substantive Consolidation Action"); <u>Sharp v. SKF Aviation,</u>

26 <u>LLC, et al.</u>, No. 10-2016-D ("the Avoidance Action"). <u>See</u> EOR

                                    3

DEF000001-DEF000082. Shortly thereafter, on February 4, 2010, Salyer was arrested on charges of, *inter alia*, wire fraud and racketeering. See Original Indictment, 2:10-cr-00061-LKK, ECF No. 1 (Feb. 4, 2010). Salyer is currently released on bail, awaiting trial on the criminal charges. See Order, 2:10-cr-00061-LKK, ECF No. 206 (Sept. 3, 2010).

### 1.   The Quiet Title Action

In the Quiet Title Action, the Trustee seeks title to three parcels of real property that are recorded in the name of non-debtor entities, SSC Farming, LLC, SSC Farms I, LLC, and SSC Farms II, LLC, but for which the debtor entities claim an equitable interest. EOR at DEF000003. The properties subject to the Quiet Title Action are "The Westlands Water District Parcels," "The Rogers Parcel," and "The Tiahart Parcel." EOR at DEF000004-DEF000010. These parcels were purchased by debtor SK Foods so that it could use the lands in order to discharge waste water that resulted from the processing and readying of tomatoes and other crops. EOR at DEF000003 ¶ 13. The Trustee alleges that debtor SK Foods provided the funds necessary to purchase these lands, yet that title was passed to one of the above-named Appellants for no consideration. See EOR at DEF000005 ¶ 21, DEF000008 ¶ 33, DEF000010 ¶ 42.

### 2.   The Substantive Consolidation Action

In the Substantive Consolidation Action, the Trustee seeks to substantively consolidate the assets and liabilities of the non-debtor entities with the debtor estate. See FF at ¶4 and EOR at

DEF000014 (See generally EOR at DEF000013-DEF000069). The theory advanced by the Trustee in support of this action is that the financial affairs and identities of the non-debtor entities are entangled with those of the Debtor. Id. The Appellants in the Substantive Consolidation Action are Salyer, as Trustee of Scott Salyer Revocable Trust, SK PM Corp., SK Foods, LLC, SKF Canning, LLC, Scott Salyer Revocable Trust, Blackstone Ranch Corporation, Monterey Peninsula Farms, LLC, Salyer Management Co., LLC, SK Farms Services, LLC, SK Frozen Foods, LLC, SS Farms, LLC, SSC Farming, LLC, SSC Farms I, LLC, SSC Farms II, LLC, and SSC Farms III, LLC. EOR at DEF000015-DEF000016.

### 3. The Avoidance Action

In the Avoidance Action, the Trustee seeks to recover assets that were asserted to be fraudulently or preferentially transferred from SK Foods to the non-debtor entities, SKF Aviation, LLC and CSSS, LP. See FF at ¶5 and generally EOR at DEF000070-DEF000082.

### C. The Preliminary Injunction

At a status hearing on March 9 2010, counsel for the Trustee informed the Bankruptcy Court and counsel for Appellants that the Trustee intended to file that day "a motion for a preliminary injunction and to seek a temporary restraining order against transferring by any of these defendant entities outside of the normal scope of their business activities without the Court's permission." EOR at DEF000404-DEF000405.

The Trustee filed his motion that day and served Appellants' counsel via email. See FF at ¶ 11. The Trustee's motion was

supported by nine declarations and a request for judicial notice
of filings in the criminal case against Salyer.[1] FF at ¶ 12.
Appellants filed an opposition to the motion in the evening of
March 10, 2010. EOR at DEF000083 and FF at ¶ 13. As the Bankruptcy
Court had indicated at the March 9, 2010 proceeding, a hearing on
the Trustee's request for a temporary restraining order ("TRO") was
scheduled for March 11, 2010. See EOR at DEF000415. That hearing
was held as scheduled, and counsel for all parties participated.
FF at ¶ 14. The extremely foreshortened nature of the proceedings,
raise questions, if not of due process, at the very least of the
opportunity for all parties and indeed for the court itself to have
a thorough and careful review of the matters at issue.[2]

In any event, at the conclusion of the proceedings, the
Bankruptcy Court granted the requested TRO as to the three
adversary proceedings described above; the court denied the TRO as
to a fourth adversary proceeding and that case is not at issue in
this appeal. FF at ¶ 15; see also TRO/EOR at DEF000103-106.
Concurrently, the court also issued an Order to Show Cause
returnable a week later, on March 18, 2010, at 1:30 p.m., as to why
a preliminary injunction should not be entered. Id. Both parties
filed briefs and additional supporting evidentiary materials before

---

[1] If one were needed, this citation illustrates the intimate
relationship between the bankruptcy proceedings and the criminal
case that is also on this court's calendar. That relationship
requires a more careful and measured consideration than what
otherwise might be appropriate.

[2] Ordinarily, of course, this concern is mitigated by the fact
that the TRO expires in two weeks.

1  the March 18, 2010 hearing. <u>See</u> FF at ¶¶ 16-17.

2      In   addition   to   the   documentary   submissions   (i.e.,
3  declarations, hearing transcripts, deposition excerpts, etc.), the
4  Trustee presented live testimony at the March 18, 2010 hearing from
5  Shondale Seymour ("Seymour"). <u>See</u> FF at ¶ 18. Seymour is the Chief
6  Financial Advisor of the debtor entities and several non-debtor
7  entities. Decl. of Shondale Seymour EOR at DEF000152. The
8  Appellants cross-examined Seymour both on her live testimony and
9  on the facts set forth in her declarations. FF at ¶ 18. Appellants
10 also had the opportunity to cross-examine another of the Trustee's
11 declarants, Lisa Crist, but declined to do so. <u>Id</u>. The Trustee also
12 offered to make other declarants available, but the Appellants
13 declined to request that these witnesses be made available at the
14 hearing. <u>Id</u>.

15     The primary evidence relied upon by the Appellants in their
16 opposition to the Trustee's preliminary injunction motion was the
17 deposition testimony of Wayne Boos, an accountant who has done work
18 for some of the Appellants. FF at ¶ 19. The Trustee requested that
19 Appellants make Boos available at the preliminary injunction
20 hearing, but he did not appear. <u>Id</u>.

21     Following the hearing, the Bankruptcy Court entered a
22 preliminary injunction on March 20, 2010, enjoining the Appellants
23 from "transferring, encumbering or moving to any location outside
24 of California, except upon application to this Court with good
25 cause shown, any and all assets that had been transferred to
26 [Appellants] by or through SK Foods, including but not limited to

real property purportedly titled in the name of SSC Farming, LLC, SSC Farms I, LLC, and SSC Farms II, LLC [the Appellants in the Quiet Title Action], and all funds transferred to [Appellants] as described in the Complaints" in the three relevant adversary proceedings. EOR at DEF000107-DEF000109.

The injunction permitted the defendant entities to "make payments in the ordinary course of business for regular salaries, lease payments, mortgage payments or utilities that become due and payable." EOR at DEF000109. Although payment of salaries was permitted, the parties here agree that there was no provision for the payment of attorneys fees, in this or any other case.

On April 5, 2010, the Bankruptcy Court issued findings of fact and conclusions of law in support of its preliminary injunction order. EOR at DEF000110-DEF000149. The court made 64 separate factual findings in support of its conclusion that an injunction was warranted.

On April 5, 2010, Appellants filed an appeal to this Court from the Bankruptcy Court's March 20, 2010 preliminary injunction order, and on June 23, 2010, Appellants filed their opening brief in this appeal.

**D.   Subsequent Modification of the Preliminary Injunction**

On March 20, 2010, Appellants filed a motion to modify the preliminary injunction in the Bankruptcy Court. Several hearings were held in July 2010. On October 13, 2010, the Bankruptcy Court modified the preliminary injunction to allow non-debtor entity SSC Farming to sell certain real property and to allow SSC Farming to

pay the title company handling the sale to be paid from the sale proceeds. It also allowed SSC Farming to make the following payments from the proceeds for the months of August through December 31, 2010: (1) up to $15,500 for the salary of one caretaker and one farming manager, (2) up to $10,000 for the principal and interest for debt on property not for sale, and (3) up to $1,900 for gas, electric, water, and communications for farming operation. The Bankruptcy Court commanded that the remaining sale proceeds will be held in a separate account from which "no withdrawals will be made . . . without further order of the [Bankruptcy] Court." This modification does not allow for the non-debtor entities to pay attorneys' fees to their counsel.

Appellants have filed a notice of appeal of this decision insofar as their appeal of the original preliminary injunction was still pending before this court. It does not appear that their motion to modify the preliminary injunction was denied in any way by the Bankruptcy Court. Nonetheless, the court cannot determine with certainty the basis of Appellants' appeal because briefing on this appeal has yet to commence.

## II. STANDARD

The standard of review of bankruptcy court decisions by district courts is well-established, and uncontested in the instant action. <u>See</u> Appellants' Opening Brief re: Stay at 4; Appellants' Opening Brief re: Preliminary Injunction at 2; Appellee's Opening Brief re: Stay at 2-3. When reviewing decisions of a bankruptcy court, district courts apply standards of review applicable to the

courts of appeals when reviewing district court decisions. <u>In re Baroff</u>, 105 F.3d 439, 441 (9th Cir. 1997); <u>see also</u> <u>In re Fields</u>, No. CIV. S-09-2930 FCD, 2010 WL 3341813, *2 (E.D. Cal. 2010) ("A district court's standard of review over a bankruptcy court's decision is identical to the standard used by circuit courts reviewing district court decisions.") (citation omitted).

The bankruptcy court's conclusions of law are reviewed *de novo*. <u>In re Sunnymead Shopping Center Co.</u>, 178 B.R. 809, 814 (9th Cir. 1995) (citing <u>In re Pecan Groves of Arizona</u>, 951 F.2d 242, 244 (9th Cir. 1991)). District courts review the bankruptcy court's findings of fact for clear error. <u>In re Sunnymead Shopping Center Co.</u>, 178 B.R. at 814 (citing <u>In re Siriani</u>, 967 F.2d 302, 303-04 (9th Cir. 1992)); <u>see also</u> Fed. R. Bank. P. 8013 ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . .")

District courts review a "bankruptcy court's choice of remedies . . . for an abuse of discretion, since it has broad equitable remedial powers." <u>In re Sunnymead Shopping Center Co.</u>, 178 B.R. at 814 (citing <u>In re Goldberg</u>, 168 B.R. 382, 284 (9th Cir. 1994) (other citations omitted.). The Ninth Circuit has held that, "Under this standard, 'a reviewing court cannot reverse unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." <u>In re Sunnymead Shopping Center Co.</u>, 178 B.R. at 814 (quoting <u>In re Goldberg</u>, 168 B.R. at 384). With respect to review of a preliminary injunction, district

court's review a bankruptcy court's decision to grant or a deny the preliminary injunction and the scope of injunctive relief for an abuse of discretion. See Southwest Voter Registration Educ. Project v. Shelley, 344 F.3d 914, 918 (9th Cir. 2003) (citing Walczak v. EPL Prolong, Inc., 198 F.3d 725, 730 (9th Cir. 1999)). Such review is "limited and deferential." Shelley, 344 F.3d at 918.[3]

### III. **ANALYSIS**

Appellants appeal the Bankruptcy Court's issuance of a preliminary injunction on four grounds. First, they contend that the Bankruptcy Court erred in prohibiting their assets to be posted for Salyer's bail. Second, they contend that two of the claims for which the Bankruptcy Court found the Trustee likely to succeed on the merits are legal claims, and not in equity, and therefore do not entitle the Trustee to a preliminary injunction. Third, they argue that the evidence submitted in support of the Trustee's claim to substantively consolidate the debtor and non-debtor entities was not sufficient to demonstrate a likelihood of success. Finally, they maintain that they were denied due process due to the expedited nature of the proceedings.

---

[3] It appears to this court quite odd that district courts review decisions of bankruptcy courts in this manner given that bankruptcy courts are a subsidiary division of district courts. It may be that the restricted standards of review are merely a way of protecting both courts from unnecessary repetition of frivolous contentions, and that in more serious matters district courts should not apply such a deferential review. Nonetheless, this court does not consider whether district courts may depart from this standard of review in unusual circumstances because all parties agree as to the applicable standard and there appears to be no support for that position, in any event.

**A.    Whether Assets May Be Used for Salyer to Post Bail**

Appellants appeal the Bankruptcy Court's order enjoining the use of assets to be posted for Salyer's bail. After this appeal was fully briefed, Salyer posted bail. While the parties did not brief mootness, the court must determine *sua sponte* whether it has jurisdiction over the appeal. A matter is moot "where no actual or live controversy exists." Foster v. Carson, 347 F.3d 742, 745 (9th Cir. 2003); see also Cole v. Oroville Union High Sch. Dist., 228 F.3d 1092, 1098 (9th Cir. 2000). Because Salyer has posted bail and he is not threatened with an actual injury related to his ability to remain on bail, this issue is moot. Thus, there is no live issue concerning the Bankruptcy Court's order insofar as it prohibited the use of assets to post Salyer's bail.

**B.    Whether the Adversary Claims Are Purely Legal Claims**

The Bankruptcy Court found that the adversary claims for avoidance of fraudulent transfers and quiet title are claims in equity, and thus, the Trustee's likelihood of success on these claims could support a preliminary injunction. Appellants insist that these claims are legal claims for money and, consequently, cannot form the basis of a preliminary injunction.

**1.    Avoidance Action**

In the avoidance action, the Trustee seeks to recover assets that were fraudulently or preferentially transferred from debtor entities to non-debtor entities. The Ninth Circuit has held that, "where . . . a party in an adversary bankruptcy proceeding alleges fraudulent conveyance or other equitable causes of action" a

1  preliminary injunction freezing assets may issue. <u>In re Focus Media</u>
2  <u>Inc.</u>, 387 F.3d 1077, 1085 (9th Cir. 2004) (also holding that <u>Grupo</u>
3  <u>Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.</u>, 527 U.S.
4  308 (1999) does not bar issuance of a preliminary injunction in
5  these circumstances). Thus, the Bankruptcy Court did not err in
6  deciding that the avoidance action is equitable.

7                    **2.   Quiet Title Action**

8        In the quiet title action, the Trustee seeks title to three
9  parcels of real property that are in the names of non-debtor
10 entities and, allegedly, purchased with debtor funds without
11 consideration.  The  Bankruptcy  Court  observed  that,  "if  the
12 defendants are permitted to sell their real estate, the Trustee
13 will have an inadequate remedy in his quiet title action." While
14 true, the little precedence on this issue demonstrates that quiet
15 title  claims  seeking  ejectment  may  be  legal  in  nature.  <u>See</u>
16 <u>Lancaster v. Kathleen Oil Co.</u>, 241 U.S. 551 (1916); <u>Whitehead v.</u>
17 <u>Shattuck</u>, 138 U.S. 146, 151 (1891). Nonetheless, the court declines
18 to decide this question. Specifically, it finds that the injunction
19 issued, i.e. to enjoin Appellants from "selling, transferring,
20 encumbering or moving to any location outside of California . . .
21 . any and all assets that had been transferred to [Appellants] by
22 or through SK Foods" is proper under the substantive consolidation
23 and avoidance actions alone. The quiet title claim is not necessary
24 to support the preliminary injunction. Thus, the court need not
25 decide whether the quiet title action is a legal or an equitable
26 claim.

1    **C.   Whether the Evidence Supports the Bankruptcy Court's**
     **Finding that the Trustee is Likely to Succeed on the**
2    **Merits of his Substantive Consolidation Claim**

3         The Bankruptcy Court found that the Trustee demonstrated a

4    likelihood of success on the merits of his substantive

5    consolidation claim after a detailed review of business records of

6    the debtor and non-debtor entities and testimony of Seymour, Chief

7    Financial Officer of the debtors and many of the non-debtor

8    entities. Appellants contend that the Bankruptcy Court erred in

9    finding a likelihood of success on the merits of this claim because

10   it did not properly evaluate the evidence before it.

11        Ninth Circuit law on substantive consolidation is well-

12   established. See In re Bonham, 229 F.3d 750 (9th Cir. 2000).

13   Substantive consolidation allows bankruptcy courts to

14   "consolidate[] assets [to] create a single fund from which all

15   claims against the consolidated debtors are satisfied; duplicate

16   and inter-company claims are extinguished; and the creditors of the

17   consolidated entities are combined for purposes of voting on

18   reorganization plans." Id. at 764 (internal citation omitted). The

19   Circuit has explained that "[w]ithout the check of substantive

20   consolidation, debtors could insulate money through transfers among

21   inter-company shell corporations with impunity." Id.[4]

22   ────────────────

23        [4] Of course, it is equally true that an improper consolidation
     could result in the destruction of perfectly innocent non-debtor
24   businesses. Thus, it would seem quite proper that the consolidation
     bludgeon be wielded with the utmost care and circumspection. While
25   this court must confess some concern as to whether that was done
     in this case, it leaves that decision to the experienced Bankruptcy
26   Court.

1    When deciding whether substantive consolidation is
2    appropriate, courts in the Ninth Circuit consider two factors: "(1)
3    whether creditors dealt with the entities as a single economic unit
4    and did not rely on their separate identity in extending credit;
5    or (2) whether the affairs of the debtor are so entangled that
6    consolidation will benefit all creditors." Id. at 766 (internal
7    quotation omitted). Either factor may constitute a sufficient basis
8    to order substantive consolidation. Id. "Consolidation under the
9    second factor, entanglement of the debtors affairs, is justified
10   only where the time and expense necessary even to attempt to
11   unscramble them [is] so substantial as to threaten the realization
12   of any net assets for all the creditors or where no accurate
13   identification and allocation of assets is possible." Id.

14   The parties dispute whether the Trustee only brings a claim
15   for substantive consolidation under the second factor or brings
16   such a claim under both factors. The court need not resolve this
17   dispute because it finds that, on the present record, the evidence
18   considered by the bankruptcy court is sufficient to demonstrate a
19   likelihood of success under the second factor. Thus, the Bankruptcy
20   Court did not abuse its discretion in preliminarily enjoining the
21   non-debtor entities.

22   Appellants raise several challenges to the evidence relied
23   upon by the Bankruptcy Court. The court will address each in turn.
24   First, they assert that Seymour's testimony contradicts the
25   Trustee's theory for substantive consolidation. In essence, they
26   argue that the entanglement theory is defeated because Seymour was

1  able to identify specific transfers of funds between debtor and
2  non-debtor entities. Perhaps, Seymour's identification of specific
3  transactions could demonstrate that identification and allocation
4  of assets is possible. However, the evidence she submitted
5  demonstrates a fair chance on the success on the merits of the
6  claim that the time and expense necessary even to attempt to
7  unscramble them is so substantial as to threaten the realization
8  of any net assets for all the creditors. See FF at 14-27. Evidence
9  of specific transactions does not defeat the Trustee's claim, but
10  rather may be seen as supporting the degree of entanglement of the
11  debtor and non-debtor entities. Seymour nowhere indicated that her
12  descriptions of transactions were exhaustive. Instead, she revealed
13  numerous transactions that suggest that the Trustee will be able
14  to prove that the substantive consolidation is warranted. Again,
15  it is important to recognize that this opinion deals with the
16  preliminary order, and while there clearly is room to debate, the
17  court cannot find the Bankruptcy Court's evaluation of the
18  preliminary evidence faulty.

19      Second, Appellants contend that the Bankruptcy Court wrongly
20  ignored the testimony of Wayne Boos, a certified public accountant
21  who performed financial, estate planning, and tax work for many of
22  the non-debtor entities. While Boos submitted a declaration in
23  opposition to motion for a preliminary injunction, for whatever
24  reason Appellants did not produce him to testify at the hearing.
25  They presented no argument as to their failure to produce him to
26  the Bankruptcy Court or in the papers on appeal. All of that

suggests that the Appellants' reliance on the declaration was misplaced. In sum, the Bankruptcy Court's failure to credit the declaration was not an abuse of its discretion.

Third, Appellants maintain that the Bankruptcy Court's finding that Seymour was credible and possessed knowledge relevant to this claim was erroneous. The determination of credibility is factual in nature and is accorded due deference. See Anderson v. City of Bessemer, 470 U.S. 564, 573-74 (1985) (discussing clearly erroneous review). Here, the Bankruptcy Court considered the depth of Seymour's testimony. It found that her testimony at the hearing demonstrated her knowledge of the matters relevant to this claim. The court finds no basis for clear error on this determination.[5]

For the reasons discussed above, the Bankruptcy Court did not err in finding a likelihood of success on the Trustee's claim for substantive consolidation.

**D.   Appellants' Due Process Concerns**

Appellants contend that their due process rights were denied because of the expedited nature of the preliminary injunction proceedings. While this court has already noted concern about the foreshortened nature of the proceedings, concern does not automatically equate with reversible error, even if this court might have proceeded in a different manner. I now turn to the issue tendered.

_____

[5] This is not to say that there may not be conduct in the criminal proceedings which may suggest motives for Seymour's cooperation with the Trustee. Again, this is a matter in the first instance for the Bankruptcy Court.

1        First, to the extent that the Appellants are challenging the

2   temporary restraining order ("TRO") proceedings, such challenges

3   do not lie because the TRO is no longer in effect being superceded

4   by the preliminary injunction. See FF ¶¶ 9-11.

5        Second, Appellants challenge whether the week between the

6   issuance of the TRO and the hearing on the preliminary injunction

7   violated their due process rights. Specifically, they contend that

8   they could not adequately oppose the motion for a preliminary

9   injunction in the week because they were unable to communicate with

10  Salyer or review any documents in Salyer's possession. While the

11  court finds this situation troubling, it nonetheless cannot

12  determine that it violated due process. Under Federal Rule of Civil

13  Procedure 65(b)(2), a TRO must expire within fourteen (14) days

14  after it is issued "unless before that time the court, for good

15  cause, extends for a like period or the adverse party consents to

16  a longer extension." At no time did Appellants seek an extension

17  of the TRO in order to prepare their defense. Thus, absent a

18  request for an extension of the TRO, courts must rule on motions

19  for preliminary injunctions within fourteen days of the issuance

20  of a TRO. Further, after the issuance of a preliminary injunction,

21  the bound parties may move to modify or dissolve the preliminary

22  injunction upon discovery of evidence supporting its modification

23  or dissolution. While the existence of the criminal proceeding

24  should counsel caution, Appellants' due process argument must

25  ultimately be that holding the hearing on the preliminary

26  injunction one week after the issuance of the TRO rather than two

weeks after the issuance of the TRO violated their due process rights. Appellants have presented no argument or any evidence to support a contention that an addition week would have somehow affected their ability to oppose the motion for a preliminary injunction. Thus, it does not appear that the Appellants due process rights were violated.

Nonetheless, even if Appellants' due process rights were violated, they have waived this argument. The Ninth Circuit has declined to consider arguments made on appeal which a party did not assert before the bankruptcy court. Sigma Micro Corp.   v. Healthcentral.com, 504 F.3d 775, 789 (9th Cir. 2007) (citation omitted); see also In re Rains, 428 F.3d 893, 902 (9th Cir. 2005) (holding that Appellant "waived his due process claim by failing to raise it properly before either the bankruptcy court or the district court"); Levitt v. Levitt, 2007 WL 1651062, at *4 (E.D. Cal. June 5, 2007) (declining to "consider theories asserted for the first time on appeal" which "were never directly or properly raised at the bankruptcy court level[ ]"), aff'd unpub'd opinion, Levitt v. Maxwell-Stratton, 310 Fed. Appx. 127, 128 (9th Cir. 2009) (citation omitted) (finding that "district court properly declined to considered [certain] issues raised by [appellant] because he did not raise them before the bankruptcy court[]."").

Here, the Bankruptcy Court noted that, "All Defendants voluntarily appeared in this proceeding, filed opposition papers and introduced evidence, and at no time did the Defendants raise any objection to this Court's jurisdiction or ability to hear the

1  Trustee's motion." FF at 27. Appellants have not presented any

2  evidence that contradicts the Bankruptcy Court's description of

3  their conduct. Thus, the court finds that Appellants have waived

4  their due process claims.

5       **E.   Payment of Attorneys' Fees for Non-Debtor Entities**

6       At the hearing on this appeal, counsel for the non-debtor

7  entities informed the court that she and her colleagues have not

8  been paid for their work on this case. The parties agreed that it

9  would be proper for the court to address this issue in its order

10 on the appeal of the preliminary injunction, even though it was not

11 raised before the Bankruptcy Court. The court recognizes that the

12 payment of attorneys' fees for the non-debtor entities is not

13 permitted under the preliminary injunction issued by the Bankruptcy

14 Court. The non-debtor entities, however, must be represented by

15 counsel. See E.D. Cal. Local Rule 183(a). The court is aware that

16 the Bankruptcy Court has a procedure through which counsel for

17 debtor entities may recover attorneys fees. Given that the court

18 affirms the Bankruptcy Court's finding of a likelihood of success

19 on the merits that the non-debtor entities should be substantively

20 consolidated with the debtor entities, and thus be debtor entities

21 themselves, the court finds it appropriate to amend the preliminary

22 injunction to allow for counsel for the non-debtor entities to

23 apply for attorneys' fees and costs in the same manner in which

24 counsel for debtor entities may.[6] The court instructs the

25 _____

26     [6] The court is in no way authorizing the payment of Salyer's
   attorneys' fees for his criminal defense with assets in the

1 Bankruptcy Court, on remand, to so amend the preliminary injunction

2 and to issue any orders necessary to implement the amendment.

3                              **IV.  CONCLUSION**

4      For the foregoing reasons, the court AFFIRMS the Bankruptcy

5 Court's issuance of a preliminary injunction except insofar as the

6 injunction prevents counsel for the non-debtor entities to recover

7 fees and costs. Thus, the court INSTRUCTS the Bankruptcy Court, on

8 remand, to amend the injunction to allow counsel for non-debtor

9 entities to recover fees and costs in the same manner in which

10 counsel for debtor entities recover fees and costs.

11      IT IS SO ORDERED.

12      DATED:  December 9, 2010.

13

14

15

16                              LAWRENCE K. KARLTON
                                SENIOR JUDGE
17                              UNITED STATES DISTRICT COURT

18

19

20

21

22

23

24

25 _____

26 possession of the non-debtor entities.

                                  21